JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENNADY DOLZHENKO and ZINAIDA DOLJENKO, | CASE NUMBER |
| PLAINTIFF(S) | 2:21-cv-02088-DSF (GJS) |
| v. | |
| THE CITY OF LOS ANGELES, et al., | **ORDER ON REQUEST TO PROCEED** *IN FORMA PAUPERIS* (NON-PRISONER CASE) |
| DEFENDANT(S) | |

The Court has reviewed the Request to Proceed *In Forma Pauperis* (the "Request") and the documents submitted with it. On the question of indigency, the Court finds that the party who filed the Request:

☒ is not able to pay the filing fees.   ☐ is able to pay the filing fees.

☐ has not submitted enough information for the Court to tell if the filer is able to pay the filing fees. This is what is missing:

**IT IS THEREFORE ORDERED** that:

☐ The Request is GRANTED.

☐ Ruling on the Request is POSTPONED for 30 days so that the filer may provide additional information.

☐ The Request is DENIED because the filer has the ability to pay.

☒ As explained in the attached statement, the Request is DENIED because:

☐ The District Court lacks ☐ subject matter jurisdiction ☐ removal jurisdiction.
☐ The action is frivolous or malicious.
☒ The action fails to state a claim upon which relief may be granted.
☐ The action seeks monetary relief against defendant(s) immune from such relief.

**IT IS FURTHER ORDERED** that:

☐ Within 30 days of the date of this Order, the filer must do the following:

If the filer does not comply with these instructions within 30 days, this case will be DISMISSED without prejudice.

☒ As explained in the attached statement, because it is absolutely clear that the deficiencies in the complaint cannot be cured by amendment, this case is hereby DISMISSED ☐ WITHOUT PREJUDICE ☒ WITH PREJUDICE.

☐ This case is REMANDED to state court as explained in the attached statement.

| | |
|---|---|
| May 5, 2023 | *[signature]* |
| Date | United States District Judge |

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   GENNADY DOLZHENKO and              Case No. 2:21-cv-02088-DSF (GJS)
     ZINAIDA DOLJENKO,
12                                       **ATTACHMENT TO**
                  Plaintiffs             **RECOMMENDATION ON**
13                                       **APPLICATION TO PROCEED**
           v.                            **IN FORMA PAUPERIS**
14
15   THE CITY OF LOS ANGELES, *et
     al*.,
16                Defendants.

17

18        Plaintiffs Zinaida Doljenko and Gennady Dolzhenko commenced this 42

19   U.S.C. § 1983 action on a *pro se* basis, seeking leave to proceed *in forma pauperis*

20   ("IFP").  On November 19, 2021, United States District Judge Dale S. Fischer

21   denied Plaintiffs' IFP application and dismissed their First Amended Complaint

22   with 30 days leave to amend.  [Dkt. 19, "IFP Denial Order."]  The IFP Denial Order

23   identified in detail the numerous defects of the First Amended Complaint and

24   explained why the Section 1983 claims pleaded failed to state claims upon which

25   relief could be granted.

26        Plaintiffs thereafter filed their Second Amended Complaint pleading a variety

27   of federal and state law claims.  [Dkt. 27, "SAC."]  On November 2, 2022, the Court

28   issued its Order Requiring Action in response.  [Dkt. 28, "November Order."]  The

1    November Order identified the defects of the Second Amended Complaint in detail

2    and explained why the federal and state law claims alleged failed to state claims

3    upon which relief could be granted with one exception.  Plaintiff were advised of

4    their options to – within 45 days – proceed on the sole claim found to survive

5    screening and dismiss the defective parties and claims, or file a Third Amended

6    Complaint, or elect to stand on their Second Amended Complaint.

7         Plaintiffs thereafter sought and were granted two extensions of time to

8    comply with the November Order.   On March 2, 2023, they filed their Third

9    Amended Complaint, which is the subject of this recommendation.  [Dkt. 33,

10   "TAC."]

11        As Plaintiffs previously have been advised, because they seek leave to

12   proceed on an IFP basis, this District Court is required to screen the various

13   iterations of their complaint to determine whether the pleadings must be dismissed

14   as frivolous, malicious, failing to state a claim upon which relief may be granted, or

15   seeking relief against a defendant who is immune from suit.  *See* 28 U.S.C. §

16   1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (*per curiam*) (noting

17   that the mandatory screening requirement of this statute is "not limited to

18   prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (Section

19   1915(e)(2)(B) "not only permits but requires a district court to dismiss an *in forma*

20   *pauperis* complaint that fails to state a claim).  The Court has completed screening

21   the Third Amended Complaint, as set forth below.

22

23                          **GOVERNING STANDARD**

24        In screening a *pro se* complaint, the Court must construe its allegations

25   liberally and must afford the plaintiff the benefit of any doubt.  *Wilhelm v. Rotman*,

26   680 F.3d 1113, 1121 (9th Cir. 2012).  The standard applicable on screening is the

27   standard for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

28   Procedure.  *Id.*  The complaint need not contain detailed factual allegations, but

                                          2

1   must contain sufficient factual matter to state a claim for relief that is plausible on

2   its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v.*

3   *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has factual plausibility when the

4   plaintiff pleads factual content that allows the court to draw the reasonable inference

5   that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

6   Conclusory allegations are insufficient. *Id.* at 678-79.  Although a complaint need

7   not set forth detailed factual allegations, "a formulaic recitation of the elements of a

8   cause of action will not do," and the factual allegations of the complaint "must be

9   enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

10  555.  In addition to appropriate factual allegations, a complaint must include fair

11  "notice of the claim such that the opposing party may defend himself or herself

12  effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011).

13       If a complaint is dismissed, a pro se litigant must be given leave to amend

14  unless it is absolutely clear that the deficiencies of the complaint cannot be cured by

15  amendment. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th

16  Cir. 1988); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

17

18              **ALLEGATIONS OF THE THIRD AMENDED COMPLAINT**

19       Like in the prior First and Second Amended Complaints, in their Third

20  Amended Complaint, Plaintiffs assert various federal and state law claims against

21  the City of Los Angeles and 13 officials and officers of the Los Angeles Police

22  Department ("LAPD") identified as Chief Michel Moore, Assistant Chief Robert

23  Arcos, Captain Rafael Ramirez, Captain Richard Gabaldon, Lieutenant Robert

24  Toledo, Sergeant Matt Ethridge, Sergeant Jeff Beck, Detective Joseph Hampton,

25  Detective Godinez, Sergeant Eubank, Sergeant Mejia, Police Officer Herrera, and

26  Police Officer Georgeson.  The Third Amended Complaint expressly alleges that

27  Defendants Moore, Arcos, Herrera, and Georgeson are sued in both their individual

28  and official capacities; however, Plaintiffs do not identify the capacities in which the

1   remaining nine named individual Defendants are sued.  Given the allegations of the

2   pleading, it appears that, at a minimum, Plaintiffs intend to sue these nine individual

3   Defendants in their official capacities.  The Third Amended Complaint also includes

4   ten "DOE" defendants who are alleged to be employed by the LAPD.  [TAC caption

5   and ¶¶ 10-23.]

6        The Third Amended Complaint is substantially identical to the Second

7   Amended Complaint, albeit several pages shorter.  The same Defendants are named

8   and the same federal and state law claims are pleaded.  Plaintiffs, however, have

9   removed many of the prior allegations made as a part of the "False Arrest" section

10  of their prior complaint (*see, e.g.,* prior Second Amended Complaint ¶¶ 25-27, 30,

11  33, 36, 40-41, 42 (in part), and 43-45), thus omitting some of the factual detail

12  alleged in the prior pleading iteration.  The following is a summary of the current

13  relevant allegations.[1]

14       On March 27, 2019, Plaintiff Zinaida Doljenko was alone in her room when

15  she heard a knock at the door and opened it to find two LAPD officers outside it.

16  Defendant Herrera asked her if she had "threatened Kravchenko?"  Both Plaintiffs

17  deny that they have ever threatened Svetlana Kravchenko and claim to have an alibi

18  for the "time" the threat is alleged to have been made, but they also allege that

19  unspecified Defendants failed to obtain the "time" of the threat or to provide it to

20  Doljenko when she asked Defendant Herrera about it.  [TAC ¶¶ 25, 28.]  Plaintiffs

21  complain that unidentified LAPD officers failed to question Kravchenko in detail

22  about the alleged threat, or to question her sister and compare their answers, or to

23  check the security camera for the apartment building.  [TAC ¶¶ 27, 29-30.]

24

---

25  [1]     The Court has omitted the hyperbole and inappropriate language utilized throughout the

26  Third Amended Complaint – such as describing the arrest report as containing "delirium,"
    labelling the alleged victims as "scammers" and "immoral," and labelling some of the Defendants

27  as "unintelligent," "dishonest," and "despicable" – and will stick to the allegations that actually
    constitute factual allegations.

28

Defendant Mejia threated Doljenko with jail and held his fist in front of her face when she refused to let him enter Plaintiffs' room.[2] [TAC ¶ 49.] He told Doljenko that he believed Kravchenko's allegations regarding the reported threat. Approximately two hours after Defendants Mejia, Herrera, and Georgeson arrived at the apartment building, they entered Plaintiffs' room and searched it without a warrant. They did so with the intent to arrest Plaintiff Gennady Dolzhenko, even though he was not present in the room. [TAC ¶¶ 50-53.] Defendants Mejia and Georgeson told Kravchenko that if Plaintiff Dolzhenko came back, not to let him in, and that one or more unidentified Defendants told Kravchenko to change the locks, which occurred on March 27, 2019. [TAC ¶¶ 54, 56, 61.]

Ultimately, pursuant to a "conspiracy" between Kravchenko and unspecified Defendants, Defendants Mejia, Herrera, and Georgeson arrested Plaintiff Doljenko "without probable cause." The arrest report these LAPD officers filed was "false." Defendants Godinez, Eubank, and DOES 1-2 "approved" and "ratified" Doljenko's arrest, although the Third Amended Complaint does not allege how they did so. A felony criminal case was instituted against Doljenko by unspecified "Defendants," which a state court dismissed on July 10, 2019. [TAC ¶¶ 34-37.]

Plaintiffs allege that Doljenko was subjected to excessive force in connection with her March 27, 2019 arrest. She alleges that she is disabled and does not feel her feet, is unstable, has difficulty walking, and has severe polyneuropathy in her upper and lower extremities. Unspecified Defendants handcuffed Doljenko, forced her to walk out of the apartment, she then fell, and police officers pulled her up and down the staircase, causing her toes to become damaged and bleed, placed her in the back of a police car without her sandals, and failed to loosen her handcuffs when she complained they were too tight. [TAC ¶¶ 24, 41.]

On March 29, 2019, Doljenko returned to the apartment and could not get into

---

[2]     Based on the allegations of all iterations of Plaintiffs' pleading, it appears that Plaintiffs rented a room in Kravchenko's apartment.

her room, because the locks had been changed.  She called the police, who called Kravchenko, who in turn told the police she had obtained a temporary restraining order against Doljenko (which was untrue, because although such an order had been obtained, it was in someone else's name).  [TAC ¶ 61.]  On April 10, 2019, Doljenko obtained a temporary restraining order to allow entry into her room.  [TAC ¶ 62.]  On April 12, 2019, Doljenko went to the apartment and called the police, asking that her temporary restraining order be enforced.  Defendant Ethridge responded and spoke with Kravchenko for an hour, and he then told Doljenko he could not help her.  Ethridge refused to allow Doljenko to enter the apartment. [TAC ¶¶ 63, 65.]

Following the dismissal of the criminal charges filed against Doljenko, on at least six occasions between February 7, 2020 and July 2020, Plaintiffs went to the North Hollywood police station to report "the crimes committed on 03/27/19 by" Defendants Herrera, Georgeson, and Mejia and "by scammers and conspirator sisters Kravchenkos" for falsely calling 911 and lying to police officers.  [TAC ¶¶ 66-67.]  Plaintiffs made these complaints to Defendants Ethridge (February 7, 2020), Beck (March 5, 2020), and Gabaldon, Toledo, Ramirez, Arcos, and Moore (no particular date(s) specified), yet "no crime reports were completed, nothing was investigated, and nothing was submitted to the City Attorney's Office or the District Attorney's office by Defendants."  [TAC ¶¶ 68-72.]

## DISCUSSION

Having reviewed the Third Amended Complaint carefully, the Court concludes that Plaintiffs again have failed to state cognizable claims, as explained below.

## I.      Plaintiffs Fail To State A Fourth Amendment Unlawful Search Claim.

The first cause of action of the Third Amended Complaint contains five

separate claims, each of which is asserted against Defendants Mejia, Herrera, Georgeson, Ethridge, Godinez, and Eubank.  As one of these claims, Plaintiffs contend that some or all of these six Defendants violated the Fourth Amendment by committing an unlawful search when they entered Plaintiffs' room without a warrant with the intent to arrest Plaintiff Dolzhenko, who was not there.  [TAC ¶¶ 81, 88.)

The Fourth Amendment to the United States Constitution protects individuals against "unreasonable searches and seizures" by the government.  Physical entry to a residence constitutes a "search" for Fourth Amendment purposes.  *Whalen v. McMullen*, 907 F.3d 1139, 1146-47 (9th Cir. 2018).  "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," absent an applicable exception to the warrant requirement.  *Payton v. New York*, 445 U.S. 573, 586 & n.25 (1980) (citation omitted).  One established exception to the warrant requirement is a limited search incident to a lawful arrest conducted for the safety of officers and others in the area of the arrest.  *See United States v. Lemus*, 582 F.3d 958, 962-63 (9th Cir. 2009).

The "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger."  *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).  A limited "protective sweep" of a residence incident to a lawful arrest conducted to protect the safety of police officers or others is permissible without a warrant.  *Maryland v. Buie*, 494 U.S. 325, 327 (1990); *see also id.* at 333 (noting the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack").[3]  "If a suspect is 'dangerous,' he is no less dangerous simply because he

_____

[3]    As *Lemus* explained, there are two types of "protective sweep" warrantless searches of a home allowed under Supreme Court precedent (in particular, *Buie*).  One is a protective sweep of the spaces immediately adjoining the place of arrest from which an attack by another could be launched; this type of search does not require probable cause or reasonable suspicion.  582 F.3d at

1   is not arrested." *Long*, 463 U.S. at 1050.  *See United States v. Paopao*, 465 F.3d
2   404, 410-11 (9th Cir. 2006) (officers received a reliable tip that two persons
3   suspected of prior armed robberies of gambling establishments were inside a game
4   room; when several people, including one of the suspects, exited the room, the
5   exiting suspect was detained and arrested on an outstanding warrant; and a
6   warrantless protective sweep of the room thereafter to look for other suspect was
7   held to be permissible).

8        The Third Amended Complaint allegations regarding the allegedly illegal
9   search are sparse and cryptic.  The Third Amended Complaint alleges that:  on the
10  evening in question, Kravchenko made a 911 call in which she stated that Plaintiffs
11  had threatened to assault and kill her [TAC ¶ 50]; when police arrived and knocked
12  on the door of Plaintiffs' room, Doljenko denied that she had threatened
13  Kravchenko and denied Defendant Mejia's request to enter Plaintiffs' room; [TAC
14  ¶¶ 25, 49]; Doljenko exited the room and was questioned for some time by police
15  officers in the presence of Kravchenko [TAC ¶ 31]; Defendant Mejia stated that he
16  believed Kravchenko's allegations [TAC ¶ 50]; and two hours after Defendants
17  Mejia, Herrera, and Georgeson had arrived at the apartment building in response to
18  Kravchenko's 911 call, these three officers "illegally committed search in Plaintiff's
19  room with the intention to arrest" Plaintiff Dolzhenko (who was not in the
20  apartment) [TAC ¶ 53].

21       Plaintiffs' prior pleading allegations regarding the search were consistent –
22  including that Defendants entered Plaintiffs' room solely for the purpose of arresting
23  Dolzhenko – but were more fleshed out.  In their First Amended Complaint
24  ("FAC"), Plaintiffs alleged further that:  after Kravchenko made her 911 call stating

25

26  _____

27  962-63 & n.2.  The other is a more full search of the home beyond immediately adjoining areas
    when there are "articulable facts which, taken together with the rational inferences from those
28  facts, would warrant a reasonably prudent officer in believing that the area to be swept harbor[ed]
    an individual posing a danger to those on the arrest scene."  *Id.*

1    that Plaintiffs had threatened to assault and kill her, police officers spoke with

2    Kravchenko and Doljenko in the living room of the apartment at length in an

3    attempt to mediate the situation [FAC ¶¶ 23-24, 27]; and in the arrest report

4    prepared by Defendants Herrera, Georgeson, and Mejia, they stated that Mejia kept

5    asking Doljenko what would happen when the police left, and Doljenko "angrily

6    yelled at [Kravchenko] 'He will kill you' meaning [Dolzhenko] would kill her"

7    [FAC ¶ 27].[4]

8         Plaintiffs' allegations, taken as true, show that the three Defendant police

9    officers who came to the apartment had responded to a report by Kravchenko of a

10   threat to assault and kill her allegedly made by Plaintiffs, and that after speaking to

11   both the alleged victim (Kravchenko) and Doljenko, Defendant Mejia stated that he

12   believed Kravchenko's statements.  Moreover, the officers reported that, when

13   asked what would happen if they left, Doljenko stated that Dolzhenko would kill

14   Kravchenko.  The three Defendants, thus, were faced with a situation in which a

15   reasonably prudent officer could have believed that Kravchenko was in danger if

16   one or both Plaintiffs remained in the apartment.  As Plaintiffs repeatedly have

17   asserted, the Defendants entered Plaintiffs' room solely for the purpose of arresting

18   Dolzhenko – something they were permitted to do under the above protective sweep

19   authorities, even without a warrant, to protect Kravchenko from a perceived danger.

20   _____

21   [4]     On Rule 12(b)(6) review (the standard that governs here), a federal court generally does

22   not consider inconsistencies between the current complaint and its prior iterations.  *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).  However, prior consistent and more

23   detailed allegations may be considered to assess the plausibility of a current claim when applying the governing *Iqbal* standard.  *See Younesi v. Sadoughi,* No. 819CV01694JLS, 2020 WL 2562821,

24   at *4 n.5 (C.D. Cal. Apr. 22, 2020) (for purposes of a motion to dismiss alleging untimeliness, the allegations of both the original and amended complaints regarding the dates when plaintiff

25   discovered certain facts (including the additional more detailed allegations of the original complaint on this issue), which in turn bore on when the claim accrued, were considered in

26   reaching the Court's finding of untimeliness); *see also, e.g.*, *Adams v. United of Omaha Life Ins. Co*., No. SACV12969JST, 2013 WL 12113225, at *3 (C.D. Cal. Jan. 10, 2013); *Ryabyshchuk v.*

27   *Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2011 WL 5976239, at *4 (S.D. Cal. Nov.

28   28, 2011); *Fasugbe v. Willms*, No. CIV. 2:10-2320 WBS, 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011).

1    That Dolzhenko actually was not present, as Plaintiffs allege, is irrelevant, given

2    that Plaintiffs do not contend that the Defendants knew this; rather, under the Third

3    Amended Complaint's allegations (and those of the prior pleadings), the officers

4    were aware that they were not being allowed entry into his room and apparently

5    believed Dolzhenko was inside the room given that, as Plaintiffs repeatedly have

6    alleged, the officers entered the room intending to arrest him.  Similarly, the lapse of

7    time between the officers' arrival and their entry into the room is of no moment,

8    because the danger justifying the protective sweep search of the room was not what

9    might happen during the time frame while the officers were talking to Doljenko and

10   Kravchenko but, rather, what would happen *after* they left without having first

11   ensured that Dolzhenko was not present and able to harm Kravchenko once they

12   were gone.

13        Accordingly, the Third Amended Complaint fails to state a plausible claim

14   upon which relief can be granted as to Defendants Mejia, Herrera, and Georgeson

15   based on an illegal Fourth Amendment search.[5]

16        With respect to Defendants Ethridge, Godinez, and Eubank, the November

17   Order expressly advised Plaintiffs that the allegations of the Second Amended

18   Complaint were inadequate to state any viable Section 1983/Fourth Amendment

19   unlawful search claim against these three Defendants absent further allegations

20   about the circumstances surrounding the search, particularly because Plaintiffs did

21   not allege that those three Defendants were present at the apartment on the date of

22   the incident.  Although Plaintiffs were granted leave to amend the claim to state

23   additional allegations against Defendants Ethridge, Godinez, and Eubank, they have

24   not done so.  The Third Amended Complaint is essentially identical to the defective

25

26   ───────────────

27   [5]      In the November Order, the Court stated that the Fourth Amendment unlawful search
     claim against Defendants Mejia, Herrera, and Georgeson "barely" survived screening.  Upon
     further review of the pleadings and the relevant caselaw, and for the reasons set forth above, the
28   Court believes that its earlier conclusion was in error and that the claim should be dismissed.

1  Second Amended Complaint, and the current pleading's unlawful search-related

2  allegations are the very same as before and, thus, remain insufficient.  As Plaintiffs

3  were advised of this defect and failed to correct it, the Court must assume that they

4  cannot do so.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th

5  Cir. 2009) (failure to correct previously noted deficiencies is "a strong indication

6  that the plaintiffs have no additional facts to plead").

7      Accordingly, the Fourth Amendment/unlawful search claim pleaded as a part

8  of the First Cause of Action as against Defendants Mejia, Herrera, Georgeson,

9  Ethridge, Godinez, and Eubank should be dismissed without leave to amend and

10  with prejudice for failure to state a claim upon which relief could be granted.

11

12  **II.    Plaintiffs Fail to State a Fourth Amendment False Arrest Claim.**

13      The First Cause of action also includes a false arrest claim asserted against

14  Defendants Mejia, Herrera, Georgeson, Ethridge, Godinez, and Eubank.  The Fourth

15  Amendment protects against arrest without probable cause.  *See United States v.*

16  *Watson*, 423 U.S. 411, 417 (1976).  "Probable cause exists where the facts and

17  circumstances within the officers' knowledge and of which they had reasonably

18  trustworthy information are sufficient in themselves to warrant a man of reasonable

19  caution in the belief that an offense has been or is being committed by the person to

20  be arrested."  *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979); *see also*

21  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  "Whether probable cause exists

22  depends on the reasonable conclusion to be drawn from the facts known to the

23  arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152

24  (2004)); *see also John v. City of El Monte*, 515 F.3d 936, 942 (9th Cir. 2008) ("the

25  probable cause inquiry is an objective one: whether the information [the officer] had

26  when he made the arrest could have led a reasonable officer to believe that John had

27  committed an offense").

28      Plaintiffs' false arrest claim rests on the theory that probable cause to arrest

11

Doljenko for the reported threats to assault and kill Kravchenko did not exist, because:  Kravchenko was lying about the threats and did not act like she was afraid of Doljenko when the police arrived; the Defendant officers did not adequately question Kravchenko and did not conduct an independent investigation and obtain corroborative evidence to support Kravchenko's report; and the Defendants should have believed Doljenko's denial rather than Kravchenko's allegations.  [TAC ¶¶ 26-30; *see also* Second Amended Complaint ¶¶ 26, 28-33, 40-41.]

As noted earlier, the Third Amended Complaint's false arrest claim is much less factually detailed than the version of the claim alleged in the Second Amended Complaint, which the Court had found to be defective in the November Order.  As described earlier, Plaintiffs allege that:  Kravchenko called 911 to report that Plaintiffs had threatened to assault and kill her; Defendants Mejia, Herrera, and Georgeson responded promptly and spoke with both Kravchenko and Doljenko at length – indeed, Plaintiff have complained bitterly about the length of the questioning to which Doljenko was subjected [*See* FAC ¶ 24 (complaining about the length of time that officers spent questioning Doljenko]; and after doing so, Defendant Mejia advised that he believed Kravchenko's allegations about the threats.

The circumstances alleged by Plaintiffs show that the officers had probable cause to believe that Doljenko had engaged in a criminal act.  "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime."  *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003).  A detailed statement from a victim alone will support finding probable cause.  *Id.* at 978 ("A sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe that a crime has been committed and the named suspect was the perpetrator."  *Id.* at 978 (internal quotation marks and citations omitted).  But even if the victim's allegations

are disputed, probable cause nonetheless may exist. *Id.* at 979 ("The presence of a factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses."). "[T]he statements of a victim, standing alone, may supply probable cause so long as the victim provides sufficiently detailed facts regarding the incident." *Pinckney v. City of San Jose*, No. C-08-04485 RMW, 2010 WL 94266, at *4 (N.D. Cal. Jan. 6, 2010) (citing *Peng*, 335 F.3d at 978); *see also Lee v. Stone*, No. 1:20-cv-00186, 2020 WL 6449168, at *4 (D. Idaho Nov. 3, 2020) (rejecting claim that probable cause for an arrest for stalking did not exist because the officer did not independently investigate the victim's statements, finding that under *Peng* and other Ninth Circuit authority, the victim's account, by itself, was sufficient to establish probable cause).

While the Third Amended Complaint alleges that Kravchenko's statements were lies and therefore probable cause was lacking, the pleading is bereft of any factual allegations that could support a finding that the officers should have believed or known that Kravchenko was lying. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Critically, there is *nothing* alleged in *any* version of Plaintiffs' complaints that could support a finding that the officers should have disbelieved Kravchenko, no matter how liberally Plaintiffs' allegations are construed. Plaintiffs' conclusory assertions that Kravchenko was lying about the reported threats are insufficient to plausibly state a claim that probable cause was lacking, especially in light of their other allegations supporting such a finding.

As the *Peng* decision recognized, a dispute between members of a household presents a responding officer "with situations involving great potential danger to the occupants of the household," and "[i]f the officer hesitates to act, his hesitancy may

13

lead to the occurrence of otherwise preventable violence." *Peng*, 335 F.3d at 977. While the situation alleged in this case is not a domestic partner situation, the same was true in *Peng*, which nonetheless treated the underlying matter as a "domestic dispute." *See Peng*, 335 F.3d at 973, 977 (dispute between brother and sister over possession of land title documents that took place during meeting at sister's home, in which sister claimed that brother threatened violence). Here, according to Plaintiffs' allegations: the police received a 911 call from Kravchenko reporting that Plaintiffs – who rented a room in Kravchenko's apartment – had threatened to assault and kill her; police arrived and questioned both Kravchenko and Doljenko for a lengthy period of time; when asked what would happen if the police left, Doljenko angrily yelled that Dolzhenko would kill Kravchenko[6]; and Defendant Mejia concluded that Kravchenko's report about the threats was credible. While Plaintiffs conclusorily assert that probable cause was lacking, their own allegations suggest the presence of probable cause and do not plausibly allege a viable Fourth Amendment false arrest claim.

Both the IFP Denial Order and the November Order identified these defects in Plaintiffs' False Arrest claim, and despite being afforded multiple chances to correct them and to state a claim upon which relief can be granted, Plaintiffs have failed to do so. Accordingly, further amendment would be futile, and the false arrest claim alleged in the First Cause of Action should be dismissed without leave to amend and with prejudice.

### III.    Plaintiffs Fail to State a Fourth Amendment Excessive Force Claim.

In the First Cause of Action, Plaintiffs allege that Defendants "subjected

---

[6]    The Court acknowledges that Doljenko disputes that she made such a statement; however, Plaintiffs allege that the Defendant officers reported that she had done so in their Arrest Report.

14

[Doljenko] to the arrest with excessive force." [TAC ¶ 49.[7]]  The allegations of excessive force in the Third Amended Complaint are the same as those made in the Second Amended Complaint, namely that Defendants:  "(1) handcuffed Zinaida Doljenko's ill arms; (2) grabbed, pushed and pulled the disabled handcuffed plaintiff, who has severe polyneuropathy of the upper and lower extremities and who has troubles to walk, out from the apartment; (3) disabled plaintiff Zinaida Doljenko fell in the hall of the apartment building because policemen pushed her taking her out; (4) subjecting plaintiff Zinaida to severe pain and forcing to walk, policemen repeatedly pulled her up and grabbed her ill legs and arms with the excessive force; (5) policemen pulled handcuffed Plaintiff Zinaida Doljenko from the staircase of the apartment building with excessive force damaging plaintiffs' toes that became bleeding; (6) Plaintiff was placed in the back seat of the police car without sandals; (7) ignored Plaintiff's complaints that the handcuffs were too tight and hurting her and no action was taken to loosen the handcuffs." [TAC ¶ 41; *compare* SAC ¶ 49.]

Plaintiffs have failed to address any of the defects in this claim that were previously identified in the IFP Denial Order (dismissing the First Amended Complaint) or in the November Order (regarding the Second Amended Complaint). As Plaintiffs were advised in both Orders, they continue to fail to identify which Defendant(s) inflicted which specific acts alleged to constitute excessive force. Only Defendants Herrera, Georgeson, and Sgt. Mejia are identified as having been present at the apartment on the evening of Doljenko's arrest.  Yet, as in the First Amended Complaint and the Second Amended Complaint, Plaintiffs refer to all Defendants collectively—including Defendants Ethridge, Godinez, and Sgt. Eubank who were not present during Doljenko's arrest—without any differentiation

---

[7]    Because Plaintiffs alleges that the excessive force took place in the course of Doljenko's arrest and prior to booking, the Fourth Amendment governs her excessive force claim.  *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996).

1    regarding which Defendant was responsible for the conduct that allegedly

2    constituted excessive force.  Even construed liberally, Plaintiffs' excessive force

3    claim does not sufficiently provide enough factual allegations to put the Defendants

4    on notice of their individual conduct alleged to constitute a Fourth Amendment

5    violation.

6         Further, and critically, while Plaintiffs repeat the prior allegations that

7    Doljenko was "grabbed, pushed, and pulled" and that Defendants ignored her

8    complaints "that the handcuffs were too tight," Plaintiffs again have failed to allege

9    any facts explaining how these actions caused her to suffer *unconstitutional* levels of

10   pain or injury.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("'Not every push

11   or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'

12   violates the Fourth Amendment.") (citation omitted); *McGhee v. Ochoa*, No. CV 20-

13   116-JWH (AGR), 2021 WL 964252, at *4 (C.D. Cal. Jan. 19, 2021) ("Without

14   more, the use of handcuffs during an arrest is quite common and often a standard

15   practice and ordinarily, the use of handcuffs during an arrest is a very low quantum

16   of force that will not constitute excessive force." (original punctuation removed and

17   citation omitted)), *accepted by* 2021 WL 964038 (Mar. 15, 2021); *Devore v.*

18   *Dominguez*, No. CV 15-06291-JAK (DFM), 2020 WL 7223261, at *4 (C.D. Cal.

19   Sept. 15, 2020) (following prior dismissal with leave to amend orders, finding and

20   dismissing Fourth Amendment excessive force claim which alleged only that the

21   plaintiff told officers that the handcuffs were too tight and they ignored him;

22   because "[h]e has repeatedly failed to allege any facts describing the way in which

23   he was handcuffed or any facts establishing how the handcuffs caused Plaintiff to

24   suffer unconstitutional levels of pain, bruises, or any other injury.  His threadbare

25   allegations are insufficient to state a claim for excessive force."), *accepted by* 2021

26   WL 1554062 (Apr. 20, 2021); *Petros v. Duncan*, No. 1:19-CV-00277-SAB, 2019

27   WL 3459094, at *3 (E.D. Cal. July 31, 2019) (when, in prior screening order, the

28   plaintiff was advised that he had failed to allege any facts describing the way the

defendant had handcuffed him or any facts establishing that the handcuffs caused the plaintiff to suffer any pain, bruises, or any other injury to his wrists and therefore had failed to allege a cognizable claim for excessive force under the Fourth Amendment, yet in his amended complaint he again alleged only that he told the defendant that the handcuffs were too tight and the defendant responded, "too bad" and "shut up," further amendment was found to be futile and the claim was dismissed without leave to amend), *accepted by* 2020 WL 1139447 (March 9, 2020).

While a plaintiff is not required to prove her case at the pleading stage, she must do more than assert unadorned, "defendants unconstitutionally harmed me" conclusions, which is all Plaintiffs have done here. *Iqbal*, 556 U.S. at 678. Plaintiffs were advised specifically of these deficiencies in the IFP Denial Order and the November Order, yet they have failed to add any new clarifying factual allegations to support the excessive force claim, leading to the inference that they cannot do so. *See Zucco Partners, LLC*, 552 F.3d at 1007. Accordingly, further amendment would be futile, and this claim should be dismissed without leave to amend and with prejudice.

## IV.   Plaintiffs Fail to State a Fourteenth Amendment Due Process Claim.

### A.   Illegal Lockout

As a part of their First Cause of Action, Plaintiffs assert a claim for "illegal lockout," namely, that because Defendant officers told Kravchenko to "change the locks on the entry door" without a court order and "without Due Process of law," this act resulted in Plaintiffs being "illegally kicked out by defendants from the apartment where they lived." [TAC ¶ 56.] Plaintiffs allege that, two days after Doljenko's arrest, she returned to the apartment, but the locks had been changed and she was unable to get into her room. [TAC ¶ 61.] Doljenko called unnamed police officers, who arrived at the apartment and then were deceived by Kravchenko, who

1   claimed she had obtained a temporary restraining order against Doljenko.  [*Id.*]  On

2   April 10, 2019, Doljenko obtained a temporary restraining order to allow entry into

3   her room, went to the apartment, and called the police, asking that her temporary

4   restraining order be enforced.  Defendant Ethridge responded, spoke with

5   Kravchenko for an hour, and then told Doljenko he could not help her.  Ethridge

6   also refused to allow Dolzhenko to enter the apartment.  [TAC ¶¶ 62-63, 65.]

7          In essence, Plaintiffs allege a claim that their procedural due process rights

8   were violated by the above conduct of Defendants, because Plaintiffs were deprived

9   of their property rights without a proper eviction process.  To state a due process

10  claim under these circumstances, a plaintiff must allege not only the violation of a

11  right secured by the Constitution or laws of the United States, but that the

12  defendants were so enmeshed in effectuating the deprivation that their action is

13  attributable to the state.  *Meyers v. Redwood City*, 400 F.3d 765, 771 (9th Cir. 2005).

14  In limited cases, courts have found law enforcement officers were "so entangled in a

15  private self-help remedy" that their intervention and assistance during the act of

16  eviction or repossession made them participants and subjected them to liability

17  under Section 1983.  *Soldal v. Cook County*, 506 U.S. 56, 61-62 (1992); *Meyers*,

18  400 F.3d at 771.  For example, such entanglement was found when sheriff's

19  deputies oversaw a private eviction they knew was illegal under Illinois law, *Soldal*,

20  506 U.S. at 71-72, and when an officer accompanied a creditor and acted on his

21  behalf to prevent a debtor from resisting repossession of a tractor, *Harris v. City of*

22  *Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981).  "While mere acquiescence by the

23  police to stand by in case of trouble is insufficient to convert a repossession into

24  state action, police intervention and aid in the repossession" may suffice to

25  constitute a state action.  *Id.*; *see also Meyers*, 400 F.3d at 771.

26         Plaintiffs' allegations that one or more unspecified Defendants told

27  Kravchenko to change the locks and, on a later occasion, failed to force an entry into

28  the apartment on Plaintiff' behalf are insufficient to show that any of the six named

Defendants were involved in any subsequent eviction of Plaintiffs that might have occurred for purposes of procedural due process. *See Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983) (evictions take place under color of state law only when police are involved "every step" of the way). Plaintiffs continue to fail to identify who spoke to Kravchenko and advised her to change the locks on the night of Doljenko's arrest, despite alleging this cause of action against six Defendants and being warned of this defect. Again, it is apparent that three of those Defendants (Ethridge, Godinez, and Eubank) were not even present at the apartment on the night of the arrest. It is entirely unclear that any of the Defendants were present on March 29, 2019, when unnamed "police officers" refused to help Doljenko enter the apartment; it appears they were not. In addition, there is no allegation that Defendants were present or involved with installing the new locks at the time that occurred. Nor were any of the Defendants alleged to have been called to the scene to intervene in or assist with an eviction.

At most, the Third Amended Complaint – like its predecessor – alleges that some of the Defendants arrived at the apartment in response to allegations that Plaintiffs had made criminal death threats, that one of them suggested that the perceived victim change her locks, and on one occasion, one Defendant declined to force an entry into the apartment on Plaintiffs' behalf. Plaintiffs do not allege that officers arrived to assist or aid in an eviction or other self-help remedy. The facts alleged do not set forth a plausible claim that the Defendant police officers were part of an eviction process, much less at every step of the way. *See Meyers*, 400 F.3d at 769-74 (officers "summoned to a scene not of their making" involving a private car repossession effort and faced with conflicting stories about the events surrounding a vehicle repossession, who then offered the debtor the choice of either relinquishing the car or being subject to a citizen's arrest by the repossession agent, were not so enmeshed in the repossession that the deprivation of the car was attributable to the state for due process purposes).

19

1    The November Order expressly advised Plaintiffs of these defects in their

2    procedural due process "illegal lockout" claim.  Plaintiffs nonetheless have

3    repleaded the claim in its exact same deficient manner, apparently because they

4    cannot fix it.  *See Zucco Partners, LLC*, 552 F.3d at 1007.  Amendment therefore

5    would be futile, and the "illegal lockout" claim asserted in the First Cause of Action

6    should be dismissed without leave to amend and with prejudice.

7

8         **B.  Theft of Personal Property Claim**

9         As a part of their First Cause of Action, Plaintiffs allege that unspecified

10   Defendants deprived them of personal property in violation of their due process

11   rights.  According to Plaintiffs, unnamed police officers allowed "Kravchenko to

12   enter plaintiffs' room without plaintiffs' permission and to dig through plaintiffs'

13   property [and a]s the result of these unlawful actions, committed by police officers,

14   plaintiffs' personal property, including money in the amount of $1,800, was stolen."

15   [TAC ¶ 87.]  Inconsistently, and confusingly, Plaintiff earlier allege that

16   "Defendants policemen entered Plaintiffs' room and stole Plaintiffs' personal

17   property including money in the amount of $1,800 **and/or** allowed scammer S.

18   Kravchenko" to enter the room, dig through Plaintiffs' property, and steal it

19   (including the $1,800).  [TAC ¶ 55.]

20        Authorized intentional deprivation of property pursuant to an established state

21   procedure is actionable under the Due Process Clause.  *Hudson v. Palmer*, 468 U.S.

22   517, 532 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).  On the other

23   hand, "an unauthorized intentional deprivation of property by a state employee does

24   not constitute a violation of the procedural requirements of the Due Process Clause

25   of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

26   available."  *Hudson*, 468 U.S. at 533.  "California law provides an adequate post-

27   deprivation remedy for any property deprivations."  *Barnett v. Centoni*, 31 F.3d 813,

28   816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-95).

Here, reading Plaintiffs' allegations liberally, Plaintiffs contend either that one or more of the officer Defendants present at the apartment on March 27, 2019 stole their property or that they, instead, wrongfully failed to prevent Kravchenko from stealing their property.  These allegations, if proven, would show an unauthorized deprivation of property, but Plaintiffs have adequate California post-deprivation remedies.  *See Barnett*, 31 F.3d at 816-17.  Thus, Plaintiffs cannot state a viable Section 1983 due process claim.

The November Order advised Plaintiffs of this deficiency in their theft of personal property Section 1983 claim.  They have repleaded the claim in its same prior form, likely because this defect cannot be rectified through amendment.  *See Zucco Partners, LLC*, 552 F.3d at 1007.  As amendment would be futile, the claim should be dismissed without leave to amend and with prejudice.

## V.    Plaintiffs Cannot State an Equal Protection Claim.

The Second Cause of Action of the Third Amended Complaint is brought under Section 1983 and is entitled "Non-performance of duties by government employees-police officers (refusal to accept citizens' crime reports)."  [TAC at 19.] Plaintiffs allege that, on at least six occasions, Defendants Chief Michel Moore, Assistant Chief Robert Arcos, Capt. Rafael Ramirez, Capt. Richard Gabaldon, Lt. Robert Toledo, Sgt. Matt Ethridge, Sgt. Jeff Beck, and Det. Joseph Hampton failed to act on Plaintiffs' complaints about the "crimes" committed by Defendants Herrera, Georgeson, and Mejia on March 27, 2019, including their allegedly false Arrest Report, and the "crimes" committed by Kravchenko, including her "false" 911 call.  [TAC ¶ 66-71, 101-06.]  Despite Plaintiffs' repeated complaints, Defendants did not complete any crime reports, perform any investigations, or otherwise report the crimes of the arresting officers and Kravchenko to the District Attorney's Office.  [TAC ¶¶ 72, 107.]  Plaintiffs allege that this failure deprived them of their rights to equal protection under the Fourteenth Amendment.  [TAC ¶

21

108.]

The threshold allegation for any equal protection-based Section 1983 claim is that Plaintiffs must show that Defendants intentionally discriminated against them based on their membership in a protected class, *see Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that Plaintiffs were similarly situated to others who received different treatment, *see Fraley v. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993). A plaintiff must plead intentional unlawful discrimination or allege facts from which discriminatory intent may be inferred. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) ("To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.") (citation omitted). Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status. *Serrano*, 345 F.3d at 1082; *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). In order to show a discriminatory purpose sufficient to implicate the Equal Protection Clause, a plaintiff must show the "particular course of action was taken at least in part 'because of,' not merely 'in spite of,' its adverse affects upon an identifiable group." *Lee*, 250 F.3d at 687 (citation omitted).

In the November Order, the Court found that the Second Cause of Action did not satisfy the above standards. Nonetheless, Plaintiffs have repleaded this claim in exactly the same defective form in the Third Amended Complaint. Like the predecessor Second Amended Complaint, the instant Third Amended Complaint does not come close to meeting the above-noted *Iqbal* standards for stating a Section 1983 claim based on an asserted equal protection violation that is plausible on its face. *See Iqbal*, 556 U.S. at 686-87. Plaintiffs again fail entirely to allege *any* facts suggesting that Defendants acted with the intent or purpose of discriminating against

1   Plaintiffs due to their membership in any protected class or that they were treated

2   differently than any other similarly situated persons.  While Doljenko alleges she is

3   a "disabled woman," the disabled are not a protected class under the Fourteenth

4   Amendment, *Gamble v. Escondido*, 104 F.3d 300, 307 (9th Cir. 1996), and in any

5   event, she does not allege that what happened was "because of" her status as a

6   disabled person.  Plaintiffs have not alleged any cognizable theory of an equal

7   protection violation.

8        The Second Cause of Action remains wholly defective and fails to state a

9   plausible equal protection-based Section 1983 claim.  It is clear that amendment

10  would be futile, and therefore, the second claim should be dismissed without leave

11  to amend and with prejudice.

12

13  **VI.   Plaintiffs Fail to State a Claim against the City of Los Angeles and Chief**

14         **of Police Moore.**

15         A.   *Monell* **Claim Against the City of Los Angeles**

16         In the Third Cause of Action, Plaintiffs allege that the City of Los Angeles

17  ("City") is liable under Section 1983 "for the actions of its police officers because

18  such actions were in conformance with the custom, practice of the Police

19  Department."  [TAC ¶ 129.]  Plaintiffs further allege that it "is the policy, practice,

20  and custom of the defendant [City] of ignoring violations of Civil Rights, and to

21  condone cases where the residents are victims of false arrests and/or other police

22  misconduct."  [TAC ¶ 127.]  These allegations reflect an attempt to plead what is

23  known as a *Monell* claim against the City; indeed, the third claims is labeled as one

24  for "Monell Municipal Liability."  [TAC at 21.].

25         The City is a municipal entity.  To possess a viable Section 1983 claim

26  against a municipal entity, the Complaint must satisfy the pleading requirements of

27  *Monell v. Dep't of Social Services*, 436 U.S. 658, 693-95 (1978).  To prevail on their

28  Section 1983 claim against the City, Plaintiffs must show that a City custom or

23

policy was the moving force behind the asserted constitutional violations pleaded in the Third Amended Complaint's First and Second Causes of Action. *Id.* This is because a municipal entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The City may not be held liable for the conduct alleged in the Third Amended Complaint unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Absent the existence of an explicit policy, a plaintiff may show that a permanent and well-settled practice by the City gave rise to the alleged violation. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). The law requires that an unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Navarro v. Block,* 72 F.3d 712, 714-15 (9th Cir. 1996) (random acts, or single instances of misconduct are insufficient to

24

1    establish a municipal custom).

2           A plaintiff seeking to impose liability upon a municipality is required to

3    identify the policy or custom that caused the constitutional injury.  *Bd. of Cty.*

4    *Comm'rs of Bryan Cty., Okl.*, 520 U.S. at 403.  In the Third Amended Complaint,

5    Plaintiffs allege that the City has a "policy" or "practice" of:  "deliberate

6    indifference"; false arrests of innocent citizens based on fabricated arrest reports;

7    "bail practices of innocent citizens"; warrantless searches of the apartments of

8    innocent citizens; and excessive force.  [TAC ¶¶ 112, 116.]  Plaintiffs alleges that it

9    "is absolutely obvious" that these matters are City practices and policies, alluding,

10   without any explanation or factual support, to unspecified "news" accounts and

11   "cases" filed.  [TAC ¶¶ 112, 117-118.]

12          Plaintiffs' attempted *Monell* claim fails, because its does not plausibly allege

13   the requisite City custom, policy, or well-settled practice.  The TAC alleges only

14   conclusory generalities as to supposed policies or practices bereft of a single

15   supporting factual allegation.  Plaintiffs' vague allusion to unidentified news stories

16   and lawsuits is plainly inadequate to serve as factual support for their conclusory

17   policy and practice allegations.  Wholly conclusory allegations of the sort set forth

18   in the Third Amended Complaint "amount to nothing more than a 'formulaic

19   recitation of the elements' of a" Section 1983 claim and are not entitled to the

20   presumption of truth.  *See Iqbal,* 556 U.S. at 680-83 (requiring specific allegations

21   regarding the policy at issue in a civil rights case).  "Since *Iqbal*, courts have

22   repeatedly rejected conclusory *Monell* allegations that lack factual content from

23   which one could plausibly infer *Monell* liability."  *Wilson ex rel. Bevard v. City of*

24   *W. Sacramento*, No. CIV. 13-2550, 2014 WL 1616450, at *2 (E.D. Cal. Apr. 22,

25   2014); *see also, e.g., Rodriguez v. City of Modesto*, 535 Fed. App'x 643, 646 (9th

26   Cir. 2013) (affirming district court's dismissal of *Monell* claim based only on

27   conclusory allegations and lacking factual support after the plaintiff had been

28   warned of this deficiency and failed to correct it); *Whyte v. City of San Diego*, No.

                                              25

1   21CV1159-LAB-MDD, 2022 WL 17491178, at *3 (S.D. Cal. Dec. 7, 2022)

2   (dismissing *Monell* claim without leave to amend which alleged that the defendant

3   municipality "as a matter of custom, practice, and policy, failed to adequately and

4   properly screen and hire Defendant" and that the "lack of adequate screening and

5   hiring practices by Defendants evince deliberate indifference to the rights of

6   Plaintiffs and others in their position," because "such a conclusory recitation of the

7   elements of a *Monell* claim is insufficient to satisfy the pleading standard required

8   under *Iqbal*").

9       Here, at most, the Third Amended Complaint alleges a single incident – the

10  March 27, 2019 visit by several of the Defendant officers resulting in Doljenko's

11  arrest and the related events that occurred in the next few days – and then

12  conclusorily asserts that this incident resulted from the City's purported policies and

13  practices of falsely arresting innocent citizens, utilizing excessive force, and

14  warrantless searches.  Even if Plaintiff's allegations of what happened on March 27,

15  2019 could be proven, as noted above, "[p]roof of a single incident of

16  unconstitutional activity is not sufficient to impose liability under *Monell*." *City of

17  Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  "A plaintiff cannot prove the

18  existence of a municipal policy or custom based solely on the occurrence of a single

19  incident of unconstitutional action by a non-policymaking employee."  *Davis v. City

20  of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).  There simply are no facts

21  alleged from which a factfinder could find the requisite policy, custom or practice of

22  the City existed and was the cause of the events of March 27, 2019, and thereafter,

23  as they are alleged to have occurred.  No plausible *Monell* claim is pleaded.

24      This is Plaintiffs' third attempt to assert a plausible *Monell* claim after twice

25  before having been warned of these defects in their claim through the IFP Denial

26  Order and the November Order.  Despite having been expressly told that the *Monell*

27  claim alleged in the Second Amended Complaint lacked the required factual

28  allegations germane to a municipal custom, policy, or practice, Plaintiffs have just

repeated the same claim, word for word, in their Third Amended Complaint.
"Under *Iqbal*, a complaint should be dismissed 'if it tenders naked assertions devoid
of further factual enhancement; . . . [r]ather, a plaintiff must allege additional facts
tending to establish that the County has a custom or policy . . . by adducing evidence
of widespread practices or . . . repeated constitutional violations for which the errant
municipal officers were not discharged or reprimanded." *Barden v. City of Pomona*,
No. CV 16-8468-MWF (JCX), 2017 WL 11633493, at *8 (C.D. Cal. June 6, 2017)
(citation and internal quotation marks omitted) (dismissing *Monell* claim when, after
being granted leave to amend, the plaintiff re-pleaded the same claim devoid of
factual allegations).  It is readily apparent that amendment would be futile, and thus,
the Third Cause of Action alleged against the City should be dismissed without
leave to amend and with prejudice.

### B.     Supervisory Liability – Chief of Police Michel Moore

In the Third Cause of Action, Plaintiffs also name Chief of Police Michel
Moore as a Defendant, yet they fail to allege a single fact that, if proven could show
that he was personally involved in the alleged violations of Plaintiffs' constitutional
rights.  At most, Plaintiffs allege that Defendant Chief Moore "sanctioned,
authorized, and ratified" the City's purported policies, customs, and practices
conclusorily alleged in the claim.  [TAC ¶ 126.]  Plaintiffs thus seek to hold Chief
Moore liable based upon his supervisory position.

Liability may not be imposed under Section 1983 on supervisory personnel
for the actions or omissions of their subordinates under the theory of respondeat
superior.  *Iqbal*, 556 U.S. at 676-78; *Simmons v. Navajo County, Ariz.*, 609 F.3d
1011, 1020-21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th
Cir. 2009).  Supervisors may be held liable only if they "participated in or directed
the violations, or knew of the violations and failed to act to prevent them." *Taylor v.
List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d at 1205-06;

1   *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Supervisory liability may

2   also exist without any personal participation if the official implemented "a policy so

3   deficient that the policy itself is a repudiation of the constitutional rights and is the

4   moving force of the constitutional violation." *Redman v. County of San Diego*, 942

5   F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted*), abrogated*

6   *on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

7          No facts are alleged in the Third Amended Complaint that, no matter how

8   liberally they are construed, could be said to satisfy these requirements.  Plaintiffs

9   have not alleged that Chief Moore was personally involved in any alleged

10  constitutional deprivations, or that he knew they were going to occur and failed to

11  prevent them.  Nor do Plaintiffs allege facts that, if proven, could plausibly establish

12  that Chief Moore personally implemented, authorized, ratified, or otherwise

13  approved of any policy, custom or practice that led to the events of March 27, 2019

14  or thereafter.  Rather, Plaintiff sue Chief Moore based purely on his status as the

15  head of the LAPD and seek to hold him liable for the alleged acts of subordinates

16  based on that status alone.  This status in itself, however, cannot render him liable

17  for the matters of which Plaintiffs complain.

18         The November Order advised Plaintiffs of the defective nature of their claim

19  against Chief Moore.  Rather than correct it, Plaintiffs has re-pleaded the claim in

20  the very same form, without adding any factual allegations.  The claim, as

21  previously pleaded and as pleaded now, fails to state a cognizable claim for relief

22  against this Defendant.  As it is apparent that Plaintiff cannot correct the defects of

23  this claim, it should be dismissed without leave to amend and with prejudice as to

24  Defendant Chief Moore.

25

26  **VII.   Plaintiffs Fail to Allege Viable State Law Claims.**

27         In their Fourth through Seventh Causes of Action, Plaintiffs assert four state

28  law claims against a variety of Defendants for under theories of false arrest, illegal

1   lockout, intentional infliction of emotional distress, and negligent infliction of

2   emotional distress.  [TAC at pp. 25-28.]  For the same reasons of which Plaintiffs

3   previously were advised through the November Order, these four claims fail to

4   adequately allege any viable state law claim.[8]

5

6       **A.   False Arrest**

7       In addition to their Section 1983 false arrest claim discussed (and found

8   wanting) earlier, through the Fourth Cause of Action, Plaintiffs bring a state law

9   claim for false arrest based on the alleged lack of probable cause to arrest Doljenko

10  and based on the same allegations that served as the basis for their Section

11  1983/false arrest claim.  [TAC ¶¶ 130-33.]

12      Under California law, false arrest is not a separate tort, but a subcategory of

13  false imprisonment.  *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir.

14  2001) (*citing to Asgari v. City of L.A.*, 15 Cal. 4th 744, 753 n.3 (1997)).  Similar to a

15  claim under Section 1983, "California state law prohibits civil liability for false

16  arrest where an arresting officer had reasonable cause to believe the arrest was

17  lawful." *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1213 (9th Cir. 2011) (citing Cal.

18  Penal Code § 847(b)(1) and reversing denial of summary judgment on state law

19  false arrest claim where officer defendants had probable cause to arrest plaintiff);

20  *see also Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 927 (N.D. Cal. 2014)

21  ("Courts analyze state false arrest and false imprisonment claims under the same

22  rubric as § 1983 claims based on false arrest under the Fourth Amendment.")

23  (citations omitted).

24

25      _____

26  [88]     Given that none of Plaintiffs' federal claims are viable, it would be appropriate to decline
    to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c);

27  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).  However, as the
    federal claims have not as yet been dismissed, the Court therefore has identified the defects in the

28  state law claims that warrant their dismissal as well, whether or not supplemental jurisdiction were
    to be declined.

29

The Court has already determined that the Third Amended Complaint fails to state a viable Section 1983 false arrest claim, because Plaintiffs' pleadings allege facts showing probable cause existed for Doljenko's detention and arrest.  Plaintiffs were specifically advised of this defect in their prior pleading through the November Order, yet have simply re-pleaded the claim without amendment.  As Plaintiffs have shown themselves unable to plead a viable version of this claim, further amendment would be futile and the Fourth Cause of Action should be dismissed without leave to amend and with prejudice.

### B.  Illegal Lockout

Through the Fifth Cause of Action, Plaintiffs assert a claim under state law for acts that six police officer Defendants allegedly took in attempting to evict Plaintiffs from the premises.  Plaintiffs incorporate the allegations of their First Cause of Action Section 1983 claim for "illegal lockout" and again allege that the "Defendants" told S. Kravchenko to "immediately change the locks on the door" after Doljenko's arrest.  [TAC ¶ 112.]  Plaintiffs assert that, as a result, they were "illegally kicked out of the apartment," they became homeless even though their monthly rent payment had not expired, and Kravchenko stole their rent payment and deposit.  [TAC ¶¶ 112-13.)

California Civil Code § 789.3 prohibits a landlord from acting willfully to "(1) prevent the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device; (2) remove outside doors or windows; or (3) remove from the premises the tenant's personal property, the furnishings, or any other items without the prior written consent of the tenant . . . ."  This statute applies only to landlord-tenant relationships.  A plaintiff may not bring a private cause of action under Section 789.3 unless a landlord-tenant relationship exists.  *Soroka v. Extended Stay, Inc*., No. CIV. 2:10–2883 WBS, 2011 WL 445834, at *6 (E.D. Cal. Feb. 7, 2011) (to establish unlawful lockout, a plaintiff

is required to prove a landlord-tenant relationship between the parties); *see also Semar Ventures, LLC v. Thornburg Mortgage Securities Trust 2007-3*, No. SACV 20-02238-CJC, 2021 WL 3598731, at *4 (C.D. Cal. Apr. 30, 2021) (claim for violation of Section 789.3 dismissed with prejudice, because such a claim requires "landlord-tenant relationships and no landlord-tenant relationship exists in this case").

The Fifth Cause of Action is brought against six police officers, not against Plaintiffs' landlord (Kravchenko).  Whether or not Plaintiffs might have a Section 789.3 illegal lockout claim against Kravchenko, they do not have such a claim against the named Defendants, who were not Plaintiffs' landlord.  The November Order advised Plaintiffs of this fundamental defect in their claim, yet they did not amend it, instead re-pleading the same defective claim as before.  Accordingly, as amendment cannot rectify this fundamental defect in the Fifth Cause of Action, the claim should be dismissed without leave to amend and with prejudice.

### C.   Intentional Infliction of Emotional Distress

Through their Sixth Cause of Action, Plaintiffs bring a state law tort claim for intentional infliction of emotional distress against all defendants.  [TAC ¶¶ 118-122.]  They assert that all the "conduct of Defendants" alleged in the Third Amended Complaint was outrageous and intended to cause them emotional distress, and that they suffered emotional distress.  [*Id.*]

In California, the elements of the tort of intentional infliction of emotional distress are "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (citation omitted).  For conduct to be outrageous, it "'must be so extreme as to

exceed all bounds of that usually tolerated in a civilized community.'" *Id.* (citation omitted); *see also Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1608 (2009) ("the conduct alleged must be so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (citation and internal quotation marks omitted). "The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Christensen*, 54 Cal. 3d at 903 (citation omitted). "With respect to the requirement that the plaintiff show severe emotional distress, this court has set a high bar. Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (citation and internal quotation marks omitted).

As did the predecessor Second Amended Complaint, the Third Amended Complaint fails to meet these requirements for pleading a viable intentional infliction of emotional distress claim. Plaintiffs allege only conclusions devoid of facts. The conduct of Defendants alleged – even if proven – does not rise to the level of outrageous conduct so extreme as to exceed all possible tolerable bounds of decency. As before, this claim is asserted against numerous Defendants in blunderbuss fashion, with no effort made it identify what each Defendants did that allegedly constituted extreme outrageous conduct. Moreover, Plaintiffs fail to allege any *facts* that, if proven, could lead a factfinder to conclude that any particular Defendant acted with the intent or reckless disregard of the probability of causing Plaintiffs severe or extreme emotional distress, "which is a necessary element of [their] claim." *Conso v. City of Eureka*, No. 21-cv-04480-RMI, 2022 WL 408858, at *13 (N.D. Cal. Feb. 10, 2022) (observing that "the FAC includes a paucity of allegations specific to intentional infliction of emotional distress, and those recitations are rendered in a conclusory fashion as to each of the elements of this claim" and dismissing the claim without leave to amend). Finally, Plaintiffs have

1   "not adequately pleaded severe or extreme emotional distress beyond using mere

2   labels." *Id*. at *52 (finding that conclusory allegations of "emotional distress" and

3   "emotional pain" were inadequate, under California law, to "establish the degree of

4   harm necessary for a claim of intentional infliction of emotional distress").

5        This Second Amended Complaint alleged the very same intentional infliction

6   of emotional distress claim as has been re-pleaded verbatim in the Third Amended

7   Complaint, despite the November Order advising Plaintiffs of the above defects in

8   their claim.  Plaintiffs apparently are unable to rectify these defects, and thus,

9   amendment would be futile.  Accordingly, the Sixth Cause of Action should be

10  dismissed without leaved to amend and with prejudice.

11

12       **D.  Negligent Infliction of Emotional Distress (Seventh Claim)**

13       In their seventh, and final, claim, Plaintiffs assert a California tort claim for

14  negligent infliction of emotional distress.  To state a negligent infliction of

15  emotional distress claim, a plaintiff must plausibly allege "(1) serious emotional

16  distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a

17  defendant who should have foreseen that the conduct would cause such distress."

18  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).  A plaintiff must allege that

19  the defendant had a duty to avoid causing him or her emotional distress, as well as

20  that the plaintiff suffered personal physical injury or serious emotional distress.

21  *Semar Ventures, LLC v. Thurnburg Mortgage Securities Trust 2007-3*, No. SACV

22  20-02238-CJC2021 WL 5020446, at *2 (C.S. Cal. June 16, 2021).

23       Through this claim, Plaintiffs allege only that the conduct of "all Defendants"

24  was negligent and a "substantial factor" in causing Plaintiffs severe emotional

25  distress, without any further elaboration.  [TAC ¶¶ 124-126.]  As previously advised

26  in the November Order, this failure to identify which specific conduct by which

27  Defendant renders the claim inadequate to meet the above requirements.  Moreover,

28  Plaintiffs have not made any factual allegations that could state a plausible basis for

satisfying the injury requirement for this claim.  Plaintiffs have not identified any physical injury allegedly resulting from the negligent infliction of emotional distress by Defendants.  Their unexplicated and wholly conclusory allegations of emotional distress -- *to wit*, unspecified "psychological injuries, mental anguish, . . ., damage to reputation, shame, humiliation, and indignity" [TAC ¶ 127] – are not adequate to plead a viable claim.  *See Semar Ventures*, 2021 WL 5020446, at * 2 ("conclusory" and "vague" allegations of "anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame," "without any sign of specific injury," held to be insufficient to state a plausible claim for relief under a negligent infliction of emotional distress theory).

The Third Amended Complaint re-pleads the exact same claim alleged in the Second Amended Complaint and which the November Order already found was defective.  Plaintiffs have made no effort to amend their claim and, thus, presumably cannot do so.  Accordingly, further amendment would be futile, and the Seventh Cause of Action should be dismissed without leave to amend and with prejudice.

## CONCLUSION

As set forth above, the undersigned has concluded that each of the Causes of Action asserted through the Third Amended Complaint fails to state a claim upon which relief could be granted.  The undersigned also has explained why amendment would be futile.  Accordingly, it is recommended that Plaintiffs' application for leave to proceed on an IFP basis be denied, that the Third Amended Complaint be dismissed without leave to amend, and that this case be dismissed with prejudice.

DATE: May 5, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE